## UNITED STATES BANRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In Re:

PENN-MONT BENEFIT SERVICES, INC.

      Debtor.

Case No. 3:13-bk-05986-JAF

Chapter 11

**\*\*\*and\*\*\***

In Re:

REAL VEBA, d/b/a REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION,

      Proposed Debtor.

Case No. 3:13-bk-05987-JAF

Chapter 11

**\*\*\*and\*\*\***

In Re:

SINGLE EMPLOYER WELFARE BENEFIT PLAN TRUST,

      Proposed Debtor.

Case No. 3:13-bk-05988-JAF

Chapter 11

**\*\*\*and\*\*\***

In Re:

PENN PUBLIC TRUST,

      Debtor.

Case No. 3:13-bk-05989-JAF

Chapter 11

**\*\*\*and\*\*\***

|  |  |
|---|---|
| In Re:<br><br>KORESKO LAW FIRM, P.C.,<br><br>      Debtor. | Case No. 3:13-bk-05990-JAF<br><br>Chapter 11 |

**\*\*\* and \*\*\***

|  |  |
|---|---|
| In Re:<br><br>KORESKO & ASSOCIATES, P.C.,<br><br>      Debtor. | Case No. 3:13-bk-05991-JAF<br><br>Chapter 11 |

## PETITIONING CREDITORS' REQUEST TO BE HEARD ON THE PROPRIETY OF TAKING JUDICICIAL NOTICE
### *(Expedited Hearing Requested)*

The Petitioning Creditors commencing the above captioned chapter 11 bankruptcy cases (the "VEBA Trust Cases"), pursuant to Rule 201(e) of the Federal Rules of Evidence applicable to these cases pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), file their request to be heard on the propriety of taking judicial notice ("Request to Be Heard") as requested by the Secretary of Labor's ("Secretary") Request for Judicial Notice of Order (Dkt. No. 51)(the "Request to Take Judicial Notice"), and request an expedited hearing on the same, and in support, say:

### Introduction.

Although it may be unusual to contest the propriety of a request to take judicial notice of a court order, the circumstances in this case so warrant.  Rule 201 of the Federal Rules of Evidence *requires* the Court to take judicial notice "if a party requests it and the court is supplied with the necessary information."  Fed.R.Evid. 201(c)(2).  Through his Request to Take Judicial Notice, the Secretary requests that the Court take judicial notice of an order entered at docket

number 603 on November 20, 2013 in the civil action styled *Perez v. Koresko, V., et. al., Case No. 2:09-cv-00988-MAM* (the "DOL Litigation") currently pending before the Honorable Mary A. McLaughlin, United States District Court Judge (the "Pennsylvania District Court Judge"), presiding in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania District Court").

"On timely request a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party on request, is still entitled to be heard." Fed.R.Evid. 201(e); *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)("Absent a request under Rule 201(e) for a hearing before the district court, the fact that the court took judicial notice of a fact or the tenor of the notice taken is not grounds for later appeal."). Of course, the only facts a party may request the Court to take judicial notice of must be adjudicative. Fed.R.Evid. 201(a). Moreover, just like all other evidence, an adjudicative fact must be admissible; and "[i]rrelevant evidence is not admissible." Fed.R.Evid. 402.

It is only when the adjudicative fact meets the threshold test of relevance should it be considered by the finder of fact. *See, U.S. v. Mitchell*, 365 F.3d 215, 252 (3d Cir. 2004)("The actual phasing offered by the government and adopted by the District Court is opaque; while we can comprehend the notice of that friction ridge arrangements are permanent [in fingerprints], we are unsure what it means to describe 'arrangements,' considered in the abstract, as unique. On one level, this seems irrelevant: Since the issue at trial was latent fingerprints, it is difficult to see how general propositions about 'arrangements' are related to any 'fact that is of consequence to the determination of the action.'"). The same holds true when considering evidence in the context of motion practice. *See, Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir.

1999)("With these principals in mind, and following the foregoing case law, we hold that a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the document contain and not to prove the truth of the documents' contents) of *relevant* public documents required to be filed with the SEC, and actually filed.") (*emphasis supplied*).  "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and   . . . the fact is of consequence in determining the action."  Fed.R.Evid. 401(a) & (b).

The November 20, 2013 Order was entered in the DOL Litigation on the *ore tenus* motion of the DOL at a hearing that occurred in the DOL Litigation i) *after* this Court held a preliminary hearing on November 13, 2013 (the "Preliminary Hearing");[1] ii) *after* the Pennsylvania District Court Judge, who has been presiding over the DOL Litigation since at least 2009, *and* who was assigned the appeals of the debtors' voluntary bankruptcy cases (the "Pennsylvania Bankruptcy Cases"), entered orders on November 12, 2013 dismissing the appeals of the Pennsylvania Bankruptcy Cases *with prejudice*;[2] iii) *after* WLG and the U.S. Trustee filed motions to dismiss and/or transfer venue of the VEBA Trust Cases; iv) *after* notice of the commencement of the VEBA Trust Cases was filed in the DOL Litigation; and v) *after* the Pennsylvania District Court Judge entered the September 16, 2013 order appointing The Wagner Law Group ("WLG") as the custodian (the "Appointment Order").  The Appointment Order,

---

[1]     There were several matters before the Court at the Preliminary Hearing, including, but not limited to, Motions to Dismiss or Transfer Venue filed by the the Wagner Law Group and the U.S Trustee (Doc. No  ), and the Emergency Motions by Petitioning Creditor for Entry of Orders for Relief in the SEWPBT and REAL VEBA Cases (Doc. No.   ).

[2]     A true and correct copy of the orders dismissing the appeals are attached hereto and incorporated herein as composite Exhibit A.

[3]     It is a general rule that a court may not deny a defendant the right to retain counsel of his choice. *Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140* A true and correct copy of the orders dismissing the appeals are attached hereto and incorporated herein as composite Exhibit A.

4

having been entered in the DOL Litigation, made no reference to enjoining future filings of bankruptcy cases, even though entered: a) *after* the Honorable Jean K. FitzSimon, United States Bankruptcy Judge, Eastern District of Pennsylvania (the "Pennsylvania Bankruptcy Judge") dismissed the Pennsylvania Bankruptcy Cases without qualification; b) *after* the Pennsylvania District Court Judge entered a memorandum opinion regarding the "(b)(4)" exception to the automatic stay (the "(b)(4) Memorandum Opinion") on a suggestion of bankruptcy filed as a result of Pennsylvania Bankruptcy Cases; and c) *after* a hearing that was held before the Pennsylvania District Court Judge, on a motion for reconsideration of the initial order regarding the "(b)(4)" exception to the automatic stay, was entered *after* the Pennsylvania District Court Judge entered the initial order on the same.  *See, Solis v. Koresko*, Civ. Act. No. 09-988 (Dist.Ct. E.D. Pa. 2013)(publication unknown however available through Google-scholar as a memorandum opinion).

Through his Request to Take Judicial Notice, the Secretary "respectfully request for this Honorable Court to take judicial notice of the [November 20, 2013 Order] entered by [the Pennsylvania District Court] in the [DOL Litigation] declaring that neither Jon Kane of the law firm of Burr & Forman, LLP, nor any other attorney at the firm of Burr & Forman, LLP, are authorized to represent [REAL VEBA Trust and SEWPBT] in this or any other pending bankruptcy matter proceeding in the Middle District of Florida.  A copy of [the November 20, 2013 Order] is attached hereto as Exhibit A."

Exhibit A attached to the Request for Judicial Notice is the November 20, 2013 Order. The November 20, 2013 Order refers to the Appointment Order, which according to the November 20, 2013 Order, states that "John J. Koresko, V., Penn-Mont Benefit Service, Inc., Penn Public Trust, Koresko and Associates, PC., and Koresko Law Firm, P.C.,  their agents,

employees, service providers, accountants, attorneys, and any other party acting in concert with or at their direction, are removed from any position they may *currently* hold with regard to . . . SEWBPT and/or . . . REAL VEBA Trust . . . and are enjoined until further order of the Court from serving as administrator, fiduciary, officer, trustee, custodian, counsel, agent, representative (including acting as attorney in fact), or consultant or adviser of the plans or employer arrangements participating in the SEWBPT and/or the REAL VEBA."   The November 20, 2013 Order goes on to say:

> [A]nd whereas the Court has *reviewed the Department of Labor's exhibits presented at the contempt hearing* [involving John J. Koresko, V.], *particularly the applications filed on behalf of the Trusts in the Middle District of Florida bankruptcy proceedings by attorney Jon Kane at the law firm of Burr & Forman LLP;* and whereas those applications seek to employ Burr & Forman LLP as counsel for the Trusts in the bankruptcy proceedings pending in the Middle District of Florida . . . ."[3]

At first glance, even when considering the ample legal expertise of the Secretary, the Secretary's counsel, the U.S. Trustee, WLG, and bankruptcy counsel (apparently) for WLG[4], that the Request to Take Judicial Notice is directed at Mr. Kane's application to employ – if such application was actually filed.  However, Mr. Kane filed only a Notice of *Limited* Appearance (Doc. No. 34) as per current or previous local practice, not an application to employ under 11 U.S.C. § 327.

---

[3]     It is a general rule that a court may not deny a defendant the right to retain counsel of his choice. *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  In *Fuller v. Diesslin*, 868 F.2d 604 (3d Cir. 1989), the Third Circuit found that a habeas writ was properly issued because the denial of the right to counsel was violated even though *pro hac vice*.

[4]     Each paper filed in the VEBA Trust Cases executed by counsel working with WLG is styled as "The Wagner Law Group, as Independent Fiduciary . . . ." as the moving party.  The signature block of each paper filed by the Wagner Law Group says: "*Attorneys for The Wagner Law Group, as Independent Fiduciary . . . .*"  At the Preliminary Hearing, counsel appeared for WLG and first announced that "My client is The Wagner Law Group, who has been appointed as the independent fiduciary to take control of all of the assests." (Prel. Hrng. Trans. p. 23-24).  The confusion appears to be the nature of WLG's position as the Independent Fiduciary.

The attachments to the Notice of Limited Appearance simply provide advanced look disclosures as required under the Bankruptcy Rules. Since no application pursuant to 11 U.S.C. § 327 was filed by Mr. Kane and Burr & Forman, LLP, when considering the ample legal expertise of the Secretary, the Secretary's counsel, the U.S. Trustee, WLG, and bankruptcy counsel (apparently) for WLG, the relevance of the November 20, 2013 Order to the VEBA Trust Cases is suspect.[5] Since several matters are pending before the Court, and since judicial notice *shall* be taken unless a request for hearing to determine the propriety of the judicial notice is filed or the issue is lost for appeal, the Petitioning Creditors can only guess what the Secretary (among others) seeks to accomplish through his first and only request for affirmative relief in the VEBA Trust Cases. The Petitioning Creditors' opposition, based upon their reasonable belief of the Secretary's motivation for filing his Request for Judicial Notice, follows:

a.      **Retention**

*First and foremost*, it is the Petitioning Creditors' strong opinion that the involvement of at least three (3) separate debtors' counsel is critical in the VEBA Trust Cases to ensure disinterestedness, as required by 11 U.S.C. § 327 and Rules 2014 and 2016, as the U.S Trustee is all too familiar. *See generally*, *In re Pillowtex Inc.*, 304 F.3d 246,251 (3d Cir. 2002); *In re Star Broad, Inc.*, 81 B.R. 835, 838 (Bankr. D.N.J. 1988). Indeed, the Pennsylvania Bankruptcy Cases were dismissed for that very reason, on the motions filed by the U.S. Trustee.

---

[5]      If the Request for Judicial Notice was intended as an "end-round" service requirements to place a non-party on notice of proceedings that he is not a party, notably no certificate of service was attached to the November 20, 2013 Order. As discussed in further detail below, the Pennsylvania District Court Judge dismissed the appeals taken (and assigned to) of the Pennsylvania Bankruptcy Cases on November 12, 2013. It could be strongly argued that the Pennsylvania Bankruptcy Cases were dismissed as of September 3, 2013 – but certainly, as of the date of the Preliminary Hearing, the only case commenced or pending under title 11 were the VEBA Trust Cases here in the Middle District of Florida. *See*, 28 U.S.C. § 1334(e).

The Notice of Limited Appearance was filed "for the limited purpose of appearing at the hearing scheduled on November 13, 2013." Dkt. No. 34.  The Notice of Limited Appearance was <u>not</u> executed by the debtors, does <u>not</u> seek approval to retain anyone, but rather (and again), provides all disclosures as required by Rule 2014 and 2015 of the Bankruptcy Rules – likely in an abundance of caution, as once the Court enters orders for relief as required by Rule 1013 of the Bankruptcy Rules, the debtors' duties under the Bankruptcy Code are triggered.[6]

28 U.S.C. § 1334 instructs that "[t]he district court in which a case under title 11 is *commenced* or *is pending* shall have exclusive jurisdiction . . . over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements of section 327."    11 U.S.C. § 327(e)(2).    As the Pennsylvania Bankruptcy Cases were dismissed by orders entered by the Pennsylvania Bankruptcy Judge September 3, 2013, and the Pennsylvania District Court Judge (same as presiding over the DOL Litigation) in her appellate capacity over bankruptcy appeals dismissed the debtors' appeals of the Pennsylvania Bankruptcy Court orders on November 12, 2013 --- the only "case under title 11" "commenced" or "pending" involving the debtors in the VEBA Trust Cases are the cases currently pending before this Court.  Accordingly, the DOL's Request to Take Judicial Notice cannot have any tendency to show a fact of consequence on Mr. Kane's and Burr & Forman's retention because neither Mr. Kane nor Burr & Foreman were asking to be retained, and only this Court -- as of the date of Preliminary Hearing —has jurisdiction to consider the issue of retention of counsel for the debtors in the VEBA Trust Cases.  The wording of the November 20, 2013 Order also shows that the Appointment Order did not address whether the debtors in the VEBA Trust Cases could file another case under Title 11 (nor did the Pennsylvania Bankruptcy Court),

---

[6]      Motions for extension of time to file required lists, schedules, statements, and documents are pending in the cases concerning the VEBA Trust Cases debtors where orders for relief have been entered.

or whether, within the context of another voluntary/involuntary case, the debtors could retain counsel as *debtors-in-possession*.

Pursuant to Rule 201(e) of the Federal Rules of Evidence, the Petitioning Creditors request that they be heard on the propriety of taking judicial notice of the November 20, 2013 Order as it may (or may not) have anything to do with the Notice of Limited Appearance or even some future proposed retention.    The Appointment Order does not prevent the debtors-in-possession from retaining counsel even though the Pennsylvania District Court had to have known that another bankruptcy case was a more than a mere remote possibility.[7]

       **b.       The Appointment Order**

It would appear that the Request to Take Judicial Notice may be intended by the Secretary to provide the Court with evidence that the Appointment Order paints a broad receiver-like stoke over the VEBA Trust Cases.  However, the Petitioning Creditors after significant due diligence and research believe that the Appointment Order does not (and almost cannot) create a receivership.

To illustrate the distinction, a receivership imposed in connection with the Securities and Exchange Act of 1934, 15 U.S.C. § 78, *et. seq.*, and in particular, 15 U.S.C. § 78u(d), together with other requirements of the SEC Act involving pre-suit regulatory controls providing the SEC with personal knowledge enabling introduction of evidence so that "whenever it shall appear to the [SEC]  . . . that **any person is engaged or is about to engage in acts or practices** constituting a violation of any provision of this [SEC Act] chapter . . . [the SEC] may in its

---

[7]     As this Court is the only Court with authority to entertain applications pursuant to 11 U.S.C. § 327, the Petitioning Creditors would request leave so that the Petitioning Creditors may seek an order from the Court allowing REAL VEBA Trust and SEWBPT to retain Burr & Forman, if Burr & Forman are still interested in being retained, pursuant to 11 U.S.C. § 327.  Again, it is undeniably in the Petitioning Creditors' (and all creditors' and the estates') interests for the debtors to be represented without question as to authority.

discretion bring an action in the proper district court of the United States, the United States

District Court for the District of Columbia, or the United States courts of any territory or other

place subject to the jurisdiction of the United States, to enjoin such acts or practices, **and upon a**

**proper showing a permanent or temporary injunction or restraining order shall be granted**

**without bond**," can withstand scrutiny.

> The statutes authorizing injunctions to prevent future securities laws violations
> require the SEC to make a '**proper showing**' to obtain injunctive relief.  15
> U.S.C. §§ 77t(b) & 78u(d)(1). As noted in the previous order, the Eleventh Circuit
> has held that an injunction can issue pursuant to the securities laws when the SEC
> establishes both a *prima facie* case of past securities law violations and a
> reasonable likelihood that the wrong will be repeated absent the injunction. *See*
> *SEC v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1199 n. 2 (11th
> Cir.1999).  In deciding whether there is a reasonable likelihood of future
> violations, courts consider the egregiousness of the defendants' actions, the nature
> of the offense, the scienter exhibited, and the degree to which the defendants
> acknowledge the wrongfulness of their misdeeds. *See, SEC v. Zale Corp.*, 650
> F.2d 718, 720 (5th Cir. Unit A July 16, 1981).

*SEC v. Globus Group, Inc.*, 117 F.Supp. 1345, 1347 (S.D. Fla. 2000) (citations in original); *and*

*see also SEC v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 99 (2d Cir. 1978):

> The Securities Act and the Securities Exchange Act speak, after all, of enjoining
> "**any person [who] is engaged or about to engage in any acts or practices**"
> which constitute or will constitute a violation. Securities Act, § 20(b), Securities
> Exchange Act, § 21(d).(fn. 7)[8]  Except for the case where the SEC steps in to
> prevent an ongoing violation, this language seems to require a finding of
> "likelihood" or "propensity" to engage in future violations. *See Chris-Craft*
> *Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 394 (2 Cir.) (opinion of
> Gurfein, J., sustaining denial of injunction), *cert. denied*, 414 U.S. 910, 94 S.Ct.
> 231, 38 L.Ed.2d 148 (1973). As said by Professor Loss, "[t]he ultimate test is
> whether the defendant's past conduct indicates . . . that there is *a reasonable*
> *likelihood* of further violation in the future." (emphasis supplied). 3 Securities
> Regulation 1976 (1961). Our recent decisions have emphasized, perhaps more

---

[8]      Footnote 7 of *Commonwealth Chemical Securities* says: " . . . Section 21(e) of the Exchange Act
authorizes the SEC to seek injunctive relief in the Federal courts in appropriate cases **to protect the**
**public interest from securities laws violations**. This section was amended by the Senate bill in several
respects, two of which require special mention. Section 21(e) was amended (i) by adding the words '*has*
*engaged'* to the present statutory language '**is engaged or is about to engaged in a violation**,' and (ii) by
changing the present statutory phrase 'proper' showing to 'such' showing. The House amendment
contained no similar provision . . . ." (**emphasis supplied**).

than older ones, the need for the SEC to go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence. *See SEC v. Universal Major Industries*, 546 F.2d 1044, 1048 (2 Cir. 1976), *petition for cert. pending*, SEC v. Parklane Hosiery, 558 F.2d 1083 (2 Cir. 1977), *and SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18 (2 Cir. 1977) where the court went so far as to say "[T]he Commission cannot obtain relief without positive proof of a reasonable likelihood that past wrong-doing will recur." *Compare SCM Corp. v. FTC*, 565 F.2d 807, 812-13 (1977). *See also Comment*, SCIENTER AND SEC INJUNCTIVE SUITS, 90 Harv.L.Rev. 1018, 1026 (1977); NOTE, SEC ENFORCEMENT ACTIONS TO ENJOIN VIOLATIONS OF SECTION 10(B) AND RULE 10B-5: THE SCIENTER QUESTION, 5 Hofstra L.Rev. 831, 834-36 (1977).

Even outside the confines of the SEC Act, courts may impose the "less than harsh" but more than "mild" permanent receivership-type injunction. *See e.g. U.S. v. James, Case No. 11-cv-913* (E.D. Pa. 2011) (In a civil action filed by the United States seeking a permanent injunction against James, an individual tax return preparer, under 26 U.S.C. §§ 7407 and 7408, and while noting, in footnote 5 of the *U.S. v. James* memorandum opinion the standards for SEC injunctions – the court found "[d]espite the Government's contention that the Court need only consider these statutory factors because both IRC provisions expressly authorize injunctive relief, the Court also considers the customary equitable criteria for granting injunctive relief. First, the Court finds it appropriate to consider the equitable criteria in order to determine the propriety of injunctive relief in preventing the recurrence of conduct, which subparts (b)(2) of Sections 7407 and 7408 require. . . . .  Second, the Court does not find that the statute expressly precludes the Court's consideration of the general equitable factors, **because neither Section 7407 nor Section 7408 <u>limit</u> the Court's jurisdiction in equity**.  Indeed, unless a statute explicitly provides to the contrary, district courts must consider the traditional equitable standard when deciding to grant equitable relief . . . .") (**emphasis <u>supplied</u>**).

The District Court for the Eastern District of Pennsylvania's memorandum opinion in *U.S. v. James* is illuminating in these regards.  The court in *U.S. v. James* cites the Supreme

Court's decisions of *Weinberger v. Romero-Bacelo*, 456 U.S. 305, 313 (1982) and *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) for these respective holdings:  "The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law" *Weinberger v. Romero-Bacelo*, at 398; "Unless a statute in so many words, **or by a necessary and inescapable inference**, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."**(emphasis supplied)**.

In stark contrast to the foregoing authorities, the Employee Retirement Income Security Act of 1974 ("ERISA") proscribes nothing of the SEC Act sort.  Contrarily shown: on June 25, 2012 the Supreme Court granted *certiorari, see,* 567 U.S. ___, 133 S.Ct. 36, 183 L.Ed.2d 674 (2012) from the Third Circuit's decision in *U.S. Airways v. McCutchen*, 663 F.3d 671 (3d Cir. 2011) and reversed the Third Circuit.  On **April 16, 2013**, the Supreme Court decided *U.S. Airways v. McCutchen*, _____ U.S. _____, 133 S.Ct. 1537 (2013).

In *McCutchen*, the Supreme Court reiterated its prior holdings that the relief Congress authorized when enacting ERISA begins with the terms of an ERISA plan and **ends with the terms of an ERISA plan**; *and as a result,* under the statute, the phraseology found in ERISA authorizing "appropriate equitable relief" limits the equitable relief available under ERISA to such relief as will enforce the terms of the ERISA plan or the ERISA statute.  Along-side of *McCutchen*, Petitioning Creditors cite again to *Weinberger v. Romero-Bacelo*, at 398 ("*Unless* a statute in so many words, **or by a necessary and inescapable inference**, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.")**(emphasis supplied)**.

The underlying facts giving rise to *McCutchen* are sympathetic. As stated its *certiorari*

petition, U.S. Airways Inc., in its capacity as Fiduciary and Plan Administrator of U.S. Airways,

Inc. Employee Benefits Plan (the "U.S. Airways Fiduciary") states:

> [The McCutchen's case] 'stems from a tragic car accident in which a young driver
> lost control of her car, crossed over the median of the road, and struck a car driven
> by' respondent James McCutchen. . . . McCutchen was seriously injured in the
> January 2007 accident – he underwent a hip replacement and physical therapy –
> and those injuries, combined with previous chronic ailments, left him
> 'functionally disabled.' McCutchen was covered by a health benefit plan (the
> "Plan")[9] . . . administered and self-financed by his employer, U.S. Airways. After
> the accident, the Plan 'paid medical expenses in the amount of $66,866 on his
> behalf. . . . Meanwhile, McCutchen sought to recover from the driver who had
> injured him. He eventually settled with that driver for $10,000. . . . With his
> lawyers' assistance, he and his wife received another $100,000 in under-insured
> motorist coverage for a total third-party recovery of $110,000 . . . . After [his
> attorneys fees and expenses], McCutchen's 'net recovery was less than $66,000 . .
> .'

Invoking the U.S. Airway Fiduciary's Reimbursement Provision of the Plan, the U.S.

Airways Fiduciary placed Mr. McCutchen on notice of a potential lien against any recovery he

may obtain against any third-party recovery. Nonetheless, Mr. McCutchen entered into the third-

party settlements, and when the U.S. Airways Fiduciary found out, it filed suit against Mr.

McCutchin seeking "appropriate equitable relief" pursuant to 29 U.S.C. § 1123(a) (of ERISA) in

the form of an equitable lien and constructive trust measured by the difference between what the

Plan had already provided to Mr. McCutchen's for his medical expenses (i.e. $66,866) and what

Mr. McCutchen received from third-parties (i.e. $110,000), or $66,866. In essence, the Plan left

---

[9] The Plan provision at issue in *McCutchen* states: "The purpose of the Plan is to provide coverage for qualified expenses that are not covered by a third party. If the Plan pays benefits for any claim you incur as the result of negligence, willful misconduct, or other actions of a third party, *the Plan will be subrogated to all your rights of recovery. You will be required to reimburse the Plan for amounts paid for claims out of any monies recovered from a third party*, including, but not limited to, your own insurance company[.] * * * In addition you * * * may not negotiate any agreements with a third party that would undermine the subrogation rights of the Plan." (the "U.S. Airways Fiduciary's Reimbursement Provision").

no room for Mr. McCutchen and his attorneys to keep any third-party settlement proceeds to defray the costs of seeking recovery from third-parties – even though, as per the terms of the Plan, pursuit of third-parties reimburses the Plan.

In response, Mr. McCutchen himself raised equitable defenses, including long standing doctrines of "make-whole" and "pro-rata" share doctrines and unjust enrichment, among other equitable defenses. The District Court for the Western District of Pennsylvania rejected Mr. McCutchin's arguments and granted summary judgment in favor of the U.S. Airways Fiduciary. The Third Circuit reversed, reasoning that it would be odd for Congress to allow in one since the U.S. Airways Fiduciary to invoke "appropriate equitable relief" under ERISA and not allow in another since Mr. McCutchin to correspondingly invoke "appropriate equitable relief" in defense.

> The Supreme Court reversed.

> The result we reach, based on the historical analysis our prior cases prescribe, fits lock and key with ERISA's focus on what a plan provides. The section under which this suit is brought 'does not, after all, authorize 'appropriate equitable relief' *at large*,' . . . . ; rather, it countenances only such relief as will enforce '*the terms of the plan*' or the statute, § 1132(a)(3) (*emphasis supplied*). That limitation reflects ERISA's principal function: to 'protect contractually defined benefits.' . . . . The statutory scheme, we have often noted, 'is built around reliance on the face of written plan documents.' . . . 'Every employee benefit plan shall be established and maintained pursuant to a written instrument,' § 1102(a)(1), and an administrator must act 'in accordance with the documents and instruments governing the plan' insofar as they accord with the statute, § 1104(a)(1)(D). The plan, in short, is at the center of ERISA. And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there."

*U.S. Airways v. McCutchen*, 133 S.Ct. 1537, 1548 (2013).[10]  In other words, *McCutchen* instructs that the only "equitable relief" allowed *under ERISA* is equitable relief that supports

---

[10]    Ultimately, the Supreme Court in *McCutchen* split the potato -- but with scalpel-like precision. The terms of the ERISA Plan bind (so to speak), and when an equitable defense illuminate what should occur when considering the ERISA Plan as a whole, it becomes a relevant factor in contract (i.e. the ERISA Plan) interpretation.  Hence, the Supreme Court found that the U.S. Airways Fiduciary

contractually defined benefits – and nothing more (and thus, limiting). "The section under which this suit is brought 'does not, after all, authorize 'appropriate equitable relief' *at large*,' . . . . ; rather, it countenances only such relief as will enforce 'the terms of the plan' or the statute, § 1132(a)(3) (emphasis added). That limitation reflects ERISA's principal function: to 'protect contractually defined benefits.'" *U.S. Airways v. McCutchen*, 133 S.Ct. 1537, 1548 (*emphasis in original) citing Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).[11]

The phase "appropriate equitable relief" appears under all three applicable ERISA civil enforcement sections found at 29 U.S.C. § 1132 – 1132(a)(2), (a)(3), and (a)(5).[12] Not unlike the Bankruptcy Code, ERISA is a "comprehensive and reticulated statue." *Nachman Corp. v. Pension Benefit Guaranty Corporation*, 446 U. S. 359, 361 (1980). "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. at 146. It is not "reaching" for the Petitioning Creditors to advance that the same phrase addressing the same subject under the same Federal statute should interpreted the same way. *See, e.g. Till v. SCS*

---

Reimbursement Provision was silent as to attorneys' fees and costs incurred as a result of pursuing third-parties, and remanded to the District Court to ponder what it is should be done (meaning *U.S. Airways Fiduciary, settle with Mr. McCutchen and unless mass exodus from the Plan is desirable, amend the Plan to specifically allow for fees and costs of third-party recovery*). More simply: the issue is one decided under the common-law principals of contracts, not ERISA statutory construction.

[11]    By loose analogy, the U.S. Trustee protects the "integrity of the bankruptcy system." If all requirements under chapter 11 of the Bankruptcy Code are met and a plan of reorganization is confirmed by the Court, regardless of whether the confirmed plan provides a windfall to a debtor, creditor, or any other interested party, surely the U.S. Trustee would be statutorily duty-bound to protect the confirmed plan against any collateral attack.

[12]    The only real distinction between "(a)(3)" and "(a)(2)" & "(a)(5)" of  29 U.S.C. § 1132 is that the Secretary may enforce "(a)(2)" & "(a)(5)". Otherwise, those provisions read the same.

*Credit Corp.*, 541 U.S. 465, 475 (2004)("We think it likely that Congress intended bankruptcy judges and trustee to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions.").

The Petitioning Creditors believe that the Appointment Order cannot provide for the appointment of an SEC-type receiver by necessary and inescapable inference.   ERISA's enforcement provisions (regulatory *and* private right) fall well short of the specific grant given to the SEC upon a "**proper showing a permanent or temporary injunction or restraining order**" allowed without bond.  15 U.S.C. § 78u(d).  Congress specifically limited equitable relief available under ERISA.  *McCutchens supra; and see Weinberger v. Romero-Bacelo*, at 398; "Unless a statute in so many words, **or by a necessary and inescapable inference**, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." (**emphasis supplied**).  WLG is merely a "custodian," whose appointment is (or should be) short lived.  Hence, it appears that the relief requested through the DOL's Request to Take Judicial Notice is seeking (perhaps) to sway this Court toward some sort of finding at some point in the past, present or in the future in these VEBA Trust Cases that the Bankruptcy Code can afford the Petitioning Creditors (the other participants, other creditors, and other interested parties) no more relief than can the WLG and the DOL.[13]  If so, this is literally incorrect – as the relief that the DOL and/or WLG can obtain in the DOL Litigation is jurisdictionally limited by Congress, whereas the relief that this Court is jurisdictionally enabled to provide *is not*.  The Petitioning Creditors request a hearing to determine the propriety of the Request to Take Judicial Notice.

---

[13]     ERISA, and thus the DOL (and thus, WLG), is concerned with and only with ERISA plans – not the **protection of the pubic interest from ~~securities laws~~ [ERISA] violations**.  *See, e.g. SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d. at fn. 7.   As a matter of contract law, participants/beneficiaries may stand at most as third-party beneficiaries under ERISA when the Secretary is involved, but doubtful considering strong Congressionally mandated ERISA state-law preemption involved (and that such a third party beneficiary provision must be expressed within 4 corners).

### c.     The "(b)(4)" Exception

The Petitioning Creditors have raised the issue of the scope of the "(b)(4)" exception to the automatic stay in the VEBA Trust Cases without denying that the "(b)(4)" exception only applies to the extent that "(b)(4)" applies.  Perhaps this is why the Secretary filed his Request for Judicial Notice; thus to show that he is acting in accord with 11 U.S.C. § 362(b)(4).

As generally understood, 11 U.S.C. § 362(b)(4) excepts from the automatic stay actions by a governmental unit to enforce the governmental unit's regulatory power to enforce a judgment other than a money judgment.   However, pursuant to 29 U.S.C. § 1132(a)(2) incorporating 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(5), the Secretary's regulatory power begins when an ERISA plan is made and ends with appropriate equitable relief as to any "person who is a fiduciary with respect to a plan who breaches" duties imposed by ERISA to the extent "personally liable" for *monetary* "losses to the plan resulting from each such breach," and allowing the removal of such fiduciary.  11 U.S.C. § 362(b)(4)'s scope does *not* include a request for monetary relief; nor does it except from Section 362(a)'s preliminary bankruptcy injunction those actions of a governmental unit [i.e. the DOL] tending to fall outside the government units' own policing and administrative authority granted by Congress.

To that end, folks involved with the bankruptcy process, both voluntarily and involuntarily, generally understand that the Court controls the estate, whereas, agency enforcement having no express provisions for placing property within its grasp, spells contempt for the interested party.  Most individuals and firms subject to SEC regulation, much like the Florida bar, must adhere to requirements and rules promulgated.  Justiciable questions arising under ERISA regularly appear be of the nature of whether ERISA even applies.  *See, Donavan v. Dillingham,* 662 F.2d. 1367, 1372 (11th Cir. 1982) ("An issue in other cases has been whether a

multiple employer trust – the enterprise – is itself an employee welfare benefit plan.  The courts, congressional committees, and the Secretary uniformly have held they are not.").

In the VEBA Trust Cases, the DOL has advanced their belief that approximately 50% (or more, according to the DOL) of REAL VEBA Trust and SEWBPT are comprised of ERISA plans.  The debtors have taken the position that only approximately 2% (or less) of REAL VEBA Trust and SEWBPT are comprised of ERISA plans.  Either way, the Petitioning Creditors upon those representations may, for purposes of a preliminary injunction that is the essence of the automatic stay, assert (and the Court could find) that approximately 50% to 98% of the DOL's actions and WLG's actions violate the automatic stay.  Of course, neither the Court nor the Petitioning Creditors can know what portion of that 50% to 98% stay violation applies to specific non-ERISA assets because neither the DOL nor WLG has sought relief from the automatic stay "for cause" under 11 U.S.C. § 362(d).[14]  Thus, on the Request to Take Judicial Notice, the Petitioning Creditors request a hearing so that the Court may determine if the November 20, 2013 Order is a fact of consequence to a determination of the issues involved in the Petitioning Creditors' Request for Immediate Entry of Orders for Relief, the Petitioning Creditors Motion to Strike and Response in Opposition to WLG's Motion to Dismiss (raising the issue of WLG's standing), among other matters before the Court, including the condition of the bankruptcy estate.

And on the issue of WLG's standing, it is clear that WLG is a "custodian" as that term is used under 11 U.S.C. § 303(h)(2).  Solvency appears to be at issue – as it should, when

---

[14]    Particularly with respect to the 50% - 98% of REAL VEBA and SEWBPT trust assets not covered under ERISA, DOL and WLG should have sought relief, so that their actions (including all orders), taken or entered in violation of the bankruptcy automatic stay are not void.  Without such an order from this Court, any such orders obtained are void (not "voidable" – **void**).  A motion pursuant to 11 U.S.C. § 362(d) would have gone a long way in articulating WLG/DOL's position.  An inference can be made:  WLG/DOL cannot advance cause for relief.

considering that the monetarily remedial ERISA provisions allowing the Secretary to redress breach of ERISA's obligations and responsibilities are aimed to "make good" to the ERISA plans.  Because the Appointment Order was entered, the Petitioning Creditors must presume that the Pennsylvania District Court understood that the ERISA plans included in the REAL VEBA Trust and SEWBPT sustained losses.  Indeed, general notions of conveyances recoverable by a trustee pursuant to 11 U.S.C. § 550 are predicated upon either i) insolvency when a transfer was made; or ii) insolvency as a result of the transfer.  *See*, 11 U.S.C. § 548.[15]  The Petitioning Creditors' right to have a bankruptcy court decide distributions is embodied in 11 U.S.C. § 303(h)(2).  Even if it were to turn out that REAL VEBA Trust and SEWBPT were solvent and were not made insolvent at any times material, 11 U.S.C. § 543 provides a custodian an excuse from turnover if a debtor is not insolvent.  *See*, 11 U.S.C. § 543(d)(1).

Of course, neither the Court nor the Petitioning Creditors can know if WLG should be excused from the turn over requirements of 11 U.S.C. § 543 because WLG did not seek relief from this Court from those requirements.  WLG did not seek relief from the automatic stay, knowing that not every asset which it is marshaling and which is subject to this bankruptcy estate is an ERISA plan asset.  Thus, on the Request to Take Judicial Notice, the Petitioning Creditors request a hearing so that the Court may determine if the November 20, 2013 Order is a fact of consequence to a determination of the issues involved with the Petitioning Creditors' requests for

---

[15]    *See, e.g. McLemore, Trustee v. Regions Bank*, 682 F.3d 414 (6th Cir. 2012)(third party administrator of various ERISA employee-benefit plans and 401(k) plans filed bankruptcy.  Bankruptcy trustee, McLemore, sued Regions Bank for breach of fiduciary duties under ERISA and state law claims.  The Sixth Circuit held *in pari delicto* and unclean hands **do not bar** trustee's ERISA claims, even though ERISA pre-emption bars all state law claims. "[T]he Trustee's [ERISA] claims exists between the victims of the wrongdoing *of the* [ERISA] plans and an alleged wrongdoer.").  Accordingly, the bankruptcy trustee is vested with both ERISA's remedial actions *and* the non-preempted Federal bankruptcy causes of action.  One must wonder how it is that the DOL and WLG (especially WLG, as a "fiduciary") could possibly arrive at the legal conclusion that bankruptcy court is not the appropriate "most value" jurisdictional forum for the VEBA Trust Cases?

relief, WLG's requests for relief, the U.S. Trustee's requests for relief, and now – any other interested parties' current or even future request for relief.

> **d.      Interest of Justice**

The Petitioning Creditors would be remiss if they did not mention their belief that the Secretary's Request to Take Judicial Notice does not appear to promote the interests of justice.[16] The U.S. Trustee's presentation at the Preliminary Hearing is telling.  According to the concerted effort of WLG, the U.S. Trustee and the DOL, it is their collective belief that transferring the VEBA Trust Cases to Pennsylvania just so the Pennsylvania Bankruptcy Court can dismiss these cases *without any regard* to the convenience of the parties in light of this Court's prior published decisions and published decisions from the forum to which the governmental units seek to have the VEBA Trust Cases transferred, is somehow in the interest of justice.  Not one person affected has appeared to want to seek to disturb the Pennsylvania District Court's supervised ERISA investigation (regardless of what portion of the bankruptcy estate includes plans subject to ERISA).

WLG's custodianship was due to come to a close last month.  WLG's report due to the Pennsylvania District Court has been unsealed, and as the Petitioning Creditors understand, after approximately four (4) years of litigation, the DOL has found little (if anything) to support a continuing injunction, even despite the fanciful nature of the allegations contained in the DOL's complaint and motion for preliminary injunction.

ERISA is concerned with ERISA plans and only the ERISA plans.  The Bankruptcy Code is concerned with the entirety of the VEBA Trust Cases debtors' estates, and each and every,

---

[16]      The DOL could have (and indeed should have – but it appears the DOL did not) personally serve Mr. Kane with the November 20, 2013 Order rather than filing on the electronic docket.  As a non-party, the enforceability of such an order is dubious at best.  Many other documents in the DOL Litigation were filed and remain under seal.

interested party who may have a claim or interest in the VEBA Trust Cases. The Petitioning Creditors do not want to see their plan benefits terminated. The Petitioning Creditors want to see the REAL VEBA Trust and SEWBPT compliant with all applicable regulations and restructured accordingly. The proprietor of the REAL VEBA Trust and SEWBPT has every incentive to comply with this Court's mandates. Nobody (not even the proprietor) can debate this Court's authority to protect and control, by every means available to the Pennsylvania District Court (and more), property of a bankruptcy estate.

Seeking to prevent the retention of very competent and specialized bankruptcy counsel from these cases under the guise of ERISA, particularly when the DOL has only been able to establish that a very small portion of property of these bankruptcy estates *may* fall within the scope of ERISA (or its attendant police and regulatory authority),[17] **is an affront to the Petitioning Creditors' rights under the Bankruptcy Code**. Imposition of a receivership is a harsh remedy, and one that Congress has left to other statutory schemes only where bankruptcy relief is for the most part is unavailable. ERISA is not such a statute. *See*, The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8 ("BAPCPA"), at Sec. 446, amending 11 U.S.C. §§ 521(a), 704(a), and 1106. Since BAPCPA's enactment date, the foregoing sections of the Bankruptcy Code now include the following Bankruptcy Code/ERISA harmonizing provisions (and incorporated into Chapter 11 pursuant to 11 U.S.C. § 1107):

> The debtor shall . . . unless a trustee is serving in the case, continue to perform the obligations required of the <u>administrator</u> (***as defined in section 3 of the Employee Retirement Income Security Act of 1974***) of an employee benefit plan if at the

---

[17]   *See, Solis v. Koresko,* 884 F.Supp. 261, 298 (E.D. Pa. 2012) ("At this time, the Court does not have sufficient information to decide whether the Secretary's requested relief is appropriate. The instant motion for partial summary judgment moves only as to three ERISA plans. **The Secretary has also informed the Court that there are both ERISA and non-ERISA covered plans in the REAL VEBA Trust**. Tr. of Oral Arg. 96. Furthermore, ongoing discovery may yet reveal additional facts that may bear on the Court's exercise of discretion regarding appropriate relief. The Court therefore defers a decision as to the Secretary's requested relief for the Plans until a later date.").

time of the commencement of the case the debtor (or any entity designated by the debtor) served as such administrator.

There is no clearer statement of why the VEBA Trust Cases should remain in bankruptcy and here in the Middle District of Florida than by simply pointing to the Secretary's actions through filing his blanket Request to Take Judicial Notice.

**WHEREFORE**, the Petitioning Creditors respectfully request that the Court schedule an expedited hearing on the propriety of the DOL's Request to Take Judicial Notice.

Respectfully Submitted on this of November 26, 2013.

MEARKLE|TRUEBLOOD|ADAM, P.L.


By:   _/s/ Brett A. Mearkle_____
      Brett A. Mearkle
      Florida Bar No. 0644706

8777 San Jose Blvd., Suit 801
Jacksonville, Florida 32217
(904) 352-1342 Telephone
(904) 352- 1814 Fax
bmearkle@mtalawyers.com

_Counsel for the Petitioning Creditors._


**Certificate of Service**

Filed separately.