UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

| | | |
|---|---|---|
| PENN-MONT  BENEFIT  SERVICES, INC., | ) | Case No.: 3:13-bk-05986-JAF |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

In re:

| | | |
|---|---|---|
| REAL VEBA d/b/a REGIONAL EMPLOYERS ASSURANCE LEAGUE VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST, | ) | Case No.: 3:13-bk-05987-JAF |
| | ) | Involuntary Chapter 11 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Proposed Debtor. | ) | |
| | ) | |

In re:

| | | |
|---|---|---|
| SINGLE   EMPLOYER   WELFARE BENEFIT PLAN TRUST, | ) | Case No.: 3:13-bk-05988-JAF |
| | ) | Involuntary Chapter 11 |
| | ) | |
| Proposed Debtor. | ) | |

In re:

| | | |
|---|---|---|
| PENN PUBLIC TRUST, | ) | Case No.: 3:13-bk-05989-JAF |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

In re:

| | |
|---|---|
| **KORESKO LAW FIRM, P.C.,** ) | **Case No.: 3:13-bk-05990-JAF** |
| ) | **Chapter 11** |
| **Debtor.** ) | |
| ) | |

In re:

| | |
|---|---|
| **KORESKO & ASSOCIATES, P.C.,** ) | **Case No.: 3:13-bk-05991-JAF** |
| ) | **Chapter 11** |
| **Debtor.** ) | |
| ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER TRANSFERRING VENUE OF CASES

THESE CASES came before the Court for hearing on November 13, 2013 (the "Hearing") to consider: (i) the United States Trustee's Motions to Transfer Cases to the Eastern District of Pennsylvania or, in the Alternative, to Dismiss Cases (the "UST Motions to Transfer Venue"),[1] (ii) the Department of Labor's ("DOL") Joinders in the UST Motions to Transfer Venue;[2] (iii) The Wagner Law Group, as Independent Fiduciary (the "IF") for Single Employer Welfare Benefit Plan Trust ("SEWBP Trust") and Regional Employers Assurance League Voluntary Employees' Beneficiary Association Trust's ("REAL VEBA Trust") Joinders in the

---

[1] The UST Motions to Transfer Venue are Doc. No. 23 in the Penn-Mont Benefit Service, Inc. ("PMBS") Bankruptcy Case; Doc. No. 24 in the Penn Public Trust ("PPT") Bankruptcy Case; Doc. No. 24 in the Koresko Law Firm, P.C. ("KLF") Bankruptcy Case; and Doc. No. 25 in the Koresko & Associates, P.C. ("K&A") Bankruptcy Case. The UST Motions to Transfer Venue are identical in each of these four cases.

[2] The DOL's Joinders in the UST Motions to Transfer Venue are Doc. Nos. 28, 29, 29, and 30 in the Bankruptcy Cases of PMBS, PPT, KLF, and K&A, respectively.

UST Motions to Transfer Venue;[3] (iv) the IF's Motions to Transfer Venue (the "IF Motions to Transfer Venue");[4] (v) the DOL's Joinders in the IF Motions to Transfer Venue;[5] (vi) the Petitioning Creditors'[6] Response to the IF Motions to Transfer Venue;[7] (vii) KLF and K&A's Oppositions to the IF Motions to Transfer Venue and the UST Motions to Transfer Venue (the "KLF and K&A Objections");[8] (viii) KLF and K&A's Memoranda of Law in Support of the KLF and K&A Objections;[9] and (ix) the Declarations of John J. Koresko, V, Esquire in Support of the KLF and the K&A Objections.[10]   At the Hearing, counsel for the United States Trustee ("UST") and the IF advised the Court that they were proceeding solely on requests to transfer venue and were not pursuing dismissal until such time as the Court determines whether venue is proper before this Court. Accordingly, the portions of the UST and IF Motions to Transfer Venue seeking dismissal of these cases are denied without prejudice.

---

[3] The IF's Joinders in the UST Motions to Transfer Venue are Doc. Nos. 32, 33, 33, and 34 in the Bankruptcy Cases of PMBS, PPT, KLF, and K&A, respectively.

[4] The IF Motions to Transfer Venue are Doc. No. 12 in the REAL VEBA Trust Bankruptcy Case and Doc. No. 12 in the SEWBP Trust Bankruptcy Case. The IF Motions to Transfer Venue are identical in both cases.

[5] The DOL's Joinders in the IF Motions to Transfer Venue are Doc. Nos. 18 and 19 in the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust, respectively.

[6] The Petitioning Creditors are Michael Graham, John D. Braddock, Truman Gailey and Jim Malone.

[7] The Petitioning Creditors' responses are Doc. Nos. 28 and 28 in the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust, respectively.

[8] The KLF and K&A's Objections are Doc. Nos. 41 and 42 in the Bankruptcy Cases of KLF and K&A, respectively.

[9] KLF and K&A's Memoranda of Law are Doc. Nos. 42 and 43 in the Bankruptcy Cases of KLF and K&A, respectively.

[10] Koresko's Declarations in Support of the KLF and K&A Objections are Doc. Nos. 43 and 44 in the Bankruptcy Cases of KLF and K&A, respectively.

3

At the Hearing, the Court took the motions to transfer venue and related papers under advisement. In lieu of additional hearings and argument, the Court directed the parties to submit proposed findings of fact and conclusions of law in support of their respective positions. Upon the arguments of counsel presented at the Hearing, the records in these bankruptcy cases, and the records of the Pennsylvania cases as referenced below, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. For the reasons set forth below, the UST and the IF Motions to Transfer Venue are granted. The Court will transfer these six above-captioned bankruptcy cases to the Philadelphia Division of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**FINDINGS OF FACT**

## 1. The Department of Labor Enforcement Action

The six bankruptcy cases of PMBS, the REAL VEBA Trust, the SEWBP Trust, PPT, KLF and K&A (collectively, the "Debtors") arise out of litigation pending in the United States District Court for the Eastern District of Pennsylvania, Philadelphia Division (the "Pennsylvania District Court").

On March 6, 2009, the Secretary of Labor for the DOL filed a complaint in the Pennsylvania District Court (the "DOL Complaint")[11] against, among other defendants, the Debtors and John J. Koresko, V ("Koresko") in Case No. 2:09-cv-00988-MAM (the "DOL Enforcement Action"). Because both the DOL and the Debtors are parties to the DOL Enforcement Action and parties in interest in the instant bankruptcy cases, the Court takes

---

[11] The DOL Complaint may be found at Doc. No. 1 in the DOL Enforcement Action, and was attached as Exhibit A to the UST Motions to Transfer Venue, and as Exhibit B to the IF's Answers to Involuntary Petitions and Motions to Dismiss, Doc. Nos. 13 in the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust (collectively, the "IF Motions to Dismiss").

4

judicial notice of the record in the DOL Enforcement Action.[12]

In the DOL Complaint, the Secretary of Labor sought relief under Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132, "in the form of equitable remedies that will redress violations, obtain restitution from employee benefit plan fiduciaries, and enforce the provisions of Title I of [ERISA]." DOL Complaint at ¶ 1. The Secretary of Labor contends that the Debtors sold employee benefit plans covered by ERISA and then improperly transferred plan assets into the Debtors' accounts. As set forth in paragraph 41 of the DOL Complaint:

> Due to the Defendants' [including the Debtors] widespread self-dealing and imprudent and disloyal conduct, and their sustained refusal to cooperate with a legitimate government investigation, a special master is needed to perform, at Defendants' [including the Debtors'] expense, a full accounting to protect the Plans by determining the full amount of the Plan assets improperly diverted to Defendants [including the Debtors] and the full amount of restitution due to each Plan.

DOL Complaint at ¶ 41.

Prior to the Hearing, in the DOL Enforcement Action, the Pennsylvania District Court entered a series of orders freezing the Debtors' assets and enjoining the Debtors from transferring certain assets, including funds in various bank accounts and cash values of certain insurance policies. Specifically, on July 9, 2013 in the DOL Enforcement Action, the Pennsylvania District Court entered an Order freezing all moneys in thirteen different bank accounts and enjoining Koresko, PMBS, PPT, K&A, and KLF from "expending, transferring, encumbering, hypothecating, secreting or otherwise disposing of assets in these accounts."[13]

---

[12] *See Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 157 (1969) (stating that "[w]e may properly take judicial notice of the record in that [prior] litigation between the same parties who are now before us.").

[13] Doc. No. 407 in the DOL Enforcement Action, a copy of which is attached as Exhibit B to the UST Motions to Transfer Venue.

Similarly, on July 23, 2013, the Pennsylvania District Court entered an interim order (the "Interim Order"), among other things, enjoining Koresko, PMBS, PPT, K&A, and KLF "from expending, transferring, encumbering, hypothecating, secreting or otherwise disposing of the cash value" of certain insurance policies.[14]

On September 16, 2013, the Pennsylvania District Court entered an Order (the "Appointment Order") finding that the Secretary of Labor "has shown a likelihood of success on the merits of the Secretary's ERISA claims and the probability of irreparable injury to the public and to the Plans and their participants and beneficiaries," and as such, ordered, among other things, that:

> John J. Koresko, V, PennMont Benefit Services, Inc., Penn Public Trust, Koresko and Associates, P.C., their agents, employees, service providers, accountants, attorney, and any other party acting in concert with or at their direction, are removed from any position they may currently hold with regard to the [SEWBP Trust and/or the REAL VEBA Trust] and are enjoined until further order of the Court from serving as administrator, fiduciary, officer, trustee, custodian, counsel, agent, representative (including attorney in fact), or consultant or adviser of the plans or employer arrangements participating in the [SEWBP Trust and/or the REAL VEBA Trust].[15]

Pursuant to the Appointment Order, the IF was granted authority to "exercise full authority and control with respect to the management or disposition of assets of the plans, employer arrangements" and the SEWBP Trust and the REAL VEBA Trust, and the Debtors, among other parties, were enjoined from "coercing, intimidating, interfering with or attempting to coerce, intimidate, or interfere with" the IF or its agents.

---

[14] Doc. No. 436 in the DOL Enforcement Action, a copy of which is attached as Exhibit C to the UST Motions to Transfer Venue.

[15] Doc. No. 496 in the DOL Enforcement Action, a copy of which is attached as Exhibit G to the IF Motions to Dismiss, at p. 1-2.

The DOL Enforcement Action remains pending, and the Pennsylvania District Court continues to conduct hearings on various matters on a regular basis.

### 2. The Debtors' Voluntary Chapter 11 Bankruptcies in Pennsylvania

On July 23, 2013, the same date on which the Pennsylvania District Court issued its Interim Order, the Debtors filed the following voluntary Chapter 11 bankruptcy petitions in the Philadelphia Division of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Pennsylvania Bankruptcy Court"):

    a.  The REAL VEBA Trust, Case No. 2:13-16440-JKF;

    b.  The SEWBP Trust, Case No. 2:13-16441-JKF;

    c.  PPT, Case No. 2:13-16443-JKF;

    d.  PMBS, Case No. 2:13-16444-JKF;

    e.  K&A, Case No. 2:13-16445-JKF; and

    f.  KLF, Case No. 2:13-16446-JKF.

Because the Debtors in the instant bankruptcy cases are the same Debtors that were before the Pennsylvania Bankruptcy Court, the Court takes judicial notice of the records in the Debtors' voluntary Pennsylvania Bankruptcy Cases.[16]

In each of the Debtors' voluntary chapter 11 petitions filed in the Pennsylvania Bankruptcy Court,[17] all of the Debtors, by and through Koresko as their authorized individual, made the following representations:

---

[16] See *Shuttlesworth*, 394 U.S. at 157.

[17] The Debtors' voluntary bankruptcy petitions filed in the Pennsylvania Bankruptcy Court are Doc. No. 1 in each of the Debtors' Pennsylvania Bankruptcy Cases and are attached as Composite Exhibit D to the UST Motions to Transfer Venue.

    a.  Their street addresses are all 200 West Fourth Street, Bridgeport, Pennsylvania 19405; and

    b.  Their counties of residence or principal places of business are Montgomery County, Pennsylvania.

On page two of each of the Debtors' voluntary chapter 11 petitions filed in Pennsylvania, in the section entitled, "Information Regarding the Debtor-Venue," all of the Debtors checked the box that states: "Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District."[18] The minutes attached to the Debtors' voluntary bankruptcy petitions filed in Pennsylvania reflect the following:

    a.  The REAL VEBA Trust and the SEWBP Trust are trusts formed under the common law of the Commonwealth of Pennsylvania. PPT is the sole trustee of both trusts, and Koresko is PPT's sole director.

    b.  PPT is a Pennsylvania Non-Profit Corporation without members and was incorporated by Koresko, PPT's sole director.

    c.  PMBS, K&A and KLF are Pennsylvania Corporations, and Koresko is both the sole director and sole shareholder for each of PMBS, K&A and KLF.[19]

On July 29, 2013, the Pennsylvania District Court ordered that the DOL Enforcement Action is exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) and shall remain active and proceed because the DOL Enforcement Action "is not seeking its own pecuniary interest in the debtors' property, but rather acting to enforce its public policy interest in enforcing the requirements of ERISA."[20]

---

[18] *Id.*

[19] *Id.*

[20] Doc. No. 446 in the DOL Enforcement Action, a copy of which is attached as Exhibit F to the UST Motions to Transfer Venue and as Exhibit C to the IF Motions to Dismiss.

Between August 6, 2013 and September 3, 2013, the Honorable Judge Jean K. FitzSimon, bankruptcy judge for the Pennsylvania Bankruptcy Court, conducted numerous hearings in the Debtors' voluntary bankruptcy cases addressing issues from joint administration to the Debtors' employment of disinterested counsel, issues that are likely to come up again before this Court. The UST objected to Debtors' applications to employ counsel and joint administration due to various questions regarding conflicts among the Debtors and the sources of retainers paid to counsel.

The Debtors' voluntary bankruptcy cases in Pennsylvania were short-lived—lasting a mere 43 days. On September 3, 2013, the Pennsylvania Bankruptcy Court entered Orders of Dismissal in each of the Debtors' voluntary bankruptcy cases due to their failure to abide by court orders. The Orders of Dismissal entered in the cases of PPT, the SEWBP Trust, the REAL VEBA Trust, and PMBS[21] reflect that these cases were dismissed because the Debtors failed to file satisfactory applications to retain counsel. These Orders of Dismissal specifically provided that the requests of PPT, the SEWBP Trust, the REAL VEBA Trust, and PMBS "for a stay of this dismissal is denied ... both because the Debtor is unlikely to prevail on appeal and because the balance of the equities favors the plan beneficiaries as the Debtor's delay in this case has harmed them but benefitted the Debtor herein."[22] Similarly, the Orders of Dismissal entered in the cases of K&A and KLF reflect that the Pennsylvania Bankruptcy Court dismissed these cases because these Debtors failed to file satisfactory applications to retain counsel and their proposed

---

[21] Doc. Nos. 69, 88, 89 and 72 in the cases of PPT, the SEWBP Trust, the REAL VEBA Trust, and PMBS before the Pennsylvania Bankruptcy Court, respectively, copies of which are attached as Composite Exhibit F to the UST Motions to Transfer Venue.

[22] *Id.*

9

counsel failed to disclose the sources and amounts of the proposed future retainers.[23]

On September 30, 2013, in each of the Debtors' Pennsylvania voluntary bankruptcy cases the Pennsylvania Bankruptcy Court entered Orders Expounding on the September 3, 2013 Dismissal Orders.[24]  The Debtors filed Notices of Appeal[25] of the orders dismissing their cases, which were not stayed pending appeal.  However, on November 11, 2013, two days prior to the Hearing, the Debtors filed motions seeking voluntary dismissal of their appeals, which appeals were dismissed with prejudice.[26]

None of the Debtors filed bankruptcy schedules or statements in their voluntary bankruptcy cases in the Pennsylvania Bankruptcy Court, and no Section 341 Meetings of Creditors were conducted in these cases.

### 3.  The Instant Florida Involuntary Bankruptcy Cases

On October 1, 2013, the four Petitioning Creditors filed involuntary bankruptcy petitions under Chapter 11 of the Bankruptcy Code against each of the Debtors, thereby initiating the instant bankruptcy cases (the "Florida Bankruptcy Cases").[27]  On that same date, Scott Alan

---

[23] Doc. Nos. 65 and 67 in the cases of KLF and K&A before the Pennsylvania Bankruptcy Court, respectively, copies of which are attached as Composite Exhibit G to the UST Motions to Transfer Venue.

[24] Doc. Nos. 96, 96, 77, 79, 75 and 71 in the cases of the REAL VEBA Trust, the SEWBP Trust, PPT, PMBS, K&A and KLF before the Pennsylvania Bankruptcy Court, respectively; copies of which are attached as Composite Exhibit H to the UST Motions to Transfer Venue.

[25] The appeals were pending before the Pennsylvania District Court under Case Numbers 2:13-cv-06050-MAM, 2:13-cv-06148-MAM, 2:13-cv-06149-MAM, 2:13-cv-06150-MAM, 2:13-cv-06151-MAM and 2:13-cv-06310-MAM, and the Notices of Appeal filed in the Pennsylvania Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust are attached as Composite Exhibit H to the IF Motions to Dismiss.

[26] The Court finds that the Debtors' motions to dismiss their appeals only after the UST and the IF filed their Motions to Transfer Venue in the Debtors' instant bankruptcy cases, in which the UST and the IF assert as grounds for dismissal the single estate rule, illuminate the Debtors' efforts to game the bankruptcy system, as discussed in more detail below.

[27] Doc. No. 1 in each of the Debtors' Bankruptcy Cases.

Orth, Esquire, on behalf of each of the Debtors, immediately filed Consents to the Entry of Orders for Relief (the "Consents").[28]  On October 3, 2013, Mr. Orth withdrew the Consents in the cases of the REAL VEBA Trust and the SEWBP Trust.[29]  In both of these cases, on October 4, 2013, this Court issued involuntary summonses.

On October 9, 2013, the Pennsylvania District Court entered an order appointing Roberta A. Colton, attorney at Trenam Kemker, as the bankruptcy counsel to represent the IF and the interests of the REAL VEBA Trust and SEWBP Trust in the Florida Bankruptcy Cases.[30]  On October 22, 2013, the IF filed the IF Motions to Transfer Venue[31] and IF Motions to Dismiss[32] in the REAL VEBA Trust and the SEWBP Trust cases.

On October 4, 2013, this Court entered Orders for Relief in the cases of PMBS, PPT, KLF and K&A.[33]  On October 24, 2013, the UST filed the UST Motions to Transfer Venue in each of these cases.  On October 25, 2013, the DOL filed its Joinders in the UST Motions to Transfer Venue, and on October 28, 2013, the IF filed its Joinders in the UST Motions to Transfer Venue.

---

[28] Doc. No. 2 in each of the Debtors' Bankruptcy Cases.

[29] Doc. No. 3 in both the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust.

[30] Doc. No. 545 in the DOL Enforcement Action.

[31] Doc. No. 12 in both the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust.

[32] Doc. No. 13 in both the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust.

[33] The Court notes that while these Debtors filed the Consents on the same date that the involuntary petitions were filed in their cases, the Debtors have yet, among other things, (i) to file a list of creditors as required in the Orders for Relief; (ii) to file any bankruptcy schedules or statements as required in the Orders for Relief; (iii) to file a list of the Twenty Largest Unsecured Creditors; (iv) to file case management summaries; or (v) in the cases of PMBS and PPT, to file applications for the retention of counsel, together with the requisite verified statements. In other words, the Debtors have failed to participate meaningfully in their cases pending before this Court.

On October 23, 2013 and October 25, 2013, this Court entered Orders scheduling Preliminary Hearings on the IF Motions to Transfer Venue and the UST Motions to Transfer Venue,[34] for November 13, 2013, and required that any responses or joinders to the Motions to Transfer Venue be filed and served five days before the November 13, 2013 Hearing, or on or before November 8, 2013.

On November 8, 2013, the Petitioning Creditors, though their counsel, Brett Mearkle, Esquire, filed responses to the IF Motions to Transfer Venue in the cases of the REAL VEBA Trust and the SEWBP Trust.[35]  The Petitioning Creditors argue that the IF has not proven its independence or its standing to oppose the involuntary petitions and that the cases are properly filed in Florida.[36]  With respect to the section on the Debtors' involuntary petitions entitled, "Venue," the Petitioning Creditors checked the box stating that "[a] bankruptcy case concerning the debtor's affiliate, general partner or partnership is pending in this District."[37]  The Petitioning Creditors did not check the box stating that the Debtors had been domiciled or had a residence, principal place of business, or principal assets in this District for 180 days immediately

---

[34] Doc. No. 14 in both the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust and Doc. Nos. 25, 26, 26 and 27 in the Bankruptcy Cases of PMBS, PPT, KLF and K&A, respectively.

[35] Doc. No. 28 in both the Bankruptcy Cases of the REAL VEBA Trust and the SEWBP Trust. In the bankruptcy cases of PMBS and PPT, no party in interest filed any opposition to the UST Motions to Transfer Venue, and no one appeared on behalf of either PMBS or PPT at the Hearing.

[36] The IF's standing to object to the involuntary petitions was not addressed at the Hearing. The Court finds the IF, acting on behalf of the REAL VEBA Trust and the SEWBPT Trust, timely controverted the involuntary petitions in accordance with the requirements in the Code. The Court further finds that when the IF was appointed by the Pennsylvania District Court to oversee the assets of the Trusts, it was granted full control over the these assets, management, and day-to-day operations, and it became the proper party to answer and oppose the involuntary petitions filed by the Petitioning Creditors. *See, e.g., In re Sun World Broadcasters, Inc.*, 5 B.R. 719, 721 (Bankr. M.D. Fla. 1980); *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 381 (Bankr. D. Kan. 2010); *In re Hewitt Grocery Co.*, 33 F. Supp. 493 (D. Conn. 1940).

[37] Doc. No. 1 in each of the Debtors' Bankruptcy Cases.

12

preceding the date of the petition or for a longer part of such 180 days than in any other District.

On November 9, 2013, KLF and K&A, through their proposed counsel, Scott Orth, Esquire, filed the KLF and the K&A Objections, memoranda in support of their Objections, and Declarations of Koresko in support of their Objections.[38]   In their opposition papers, KLF and K&A raise numerous complaints about the conduct of the IF, who was appointed by, and remains under the supervision of, the Pennsylvania District Court.  KLF and K&A also lodge multiple complaints regarding their dissatisfaction with the proceedings in both the DOL Enforcement Action and their voluntary bankruptcy cases before the Pennsylvania Bankruptcy Court.  The Court finds these matters are irrelevant to its determination of whether venue is proper before this Court.

The Court makes the following findings of fact in support of its determination that venue in the Florida Bankruptcy Cases is improper in the Middle District of Florida:

(i)     Each of the Debtors is a Pennsylvania entity formed pursuant to the laws of the Commonwealth of Pennsylvania.

(ii)    It is undisputed that, per the records maintained by the Florida Department of State, Division of Corporations, none of the Debtors is registered to conduct business in the State of Florida.

(iii)   The REAL VEBA Master Trust Agreement and the SEWBP Master Trust

---

[38] Doc. Nos. 41, 42 and 43 in the Bankruptcy Case of KLF and Doc. Nos. 42, 43 and 44 in the Bankruptcy Case of K&A. The KLF and K&A Objections, Memoranda and Declaration of Koresko filed on behalf of KLF and K&A were filed untimely after the November 8, 2013 deadline set forth in this Court's October 25, 2013 Scheduling Orders. However, the Court has considered these documents in evaluating the merits of the IF Motions to Transfer Venue and the UST Motions to Transfer Venue.

Agreement[39] both provide that "[t]o the extent that state law shall not have been preempted by the provisions of ERISA or any other law of the United States heretofore or hereafter enacted, this Trust Agreement shall be administered, construed and enforced according to the laws of the Commonwealth of Pennsylvania."[40]  With respect to venue, the SEWBP Master Trust Agreement specifically provides as follows:

> Venue and Jurisdiction.  In all actions and proceedings involving the Plan or Trust or rights, duties or benefits thereunder, the Adopting Employer (for itself and its participating employees), Plan Administrator, and Trustee consent to the exclusive personal and subject matter jurisdiction of, and all such actions shall be exclusively litigated in, the Court of Common Pleas of Montgomery County, Pennsylvania [or any other court located in the Eastern District of Pennsylvania chosen by [PMBS]], . . . .[41]

(iv)     As with the Debtors' voluntary bankruptcy petitions filed in the Pennsylvania Bankruptcy Court, each of the involuntary petitions filed in the Debtors' cases (i) lists 200 West Fourth Street, Bridgeport, Pennsylvania 19405 as the Debtors' street addresses; and (ii) states that the Debtors' counties of residence or principal places of business are Montgomery County, Pennsylvania.[42]

(v)     Neither the Petitioning Creditors nor any of the instant six Debtors have provided any valid or appropriate basis to support their choice of venue in the Middle District of Florida, Jacksonville Division.

---

[39] Both Master Trust Agreements are attached as Composite Exhibit A to the IF Motions to Transfer Venue.

[40] *Id.*

[41] SEWBP Master Trust Agreement (attached as part of Composite Exhibit A to the IF Motions to Dismiss) at Section 13.10.

[42] Doc. No. 1 in each of the Debtors' Bankruptcy Cases.

14

(vi)    Neither the Debtors nor Koresko appear to have any acceptable nexus to the Middle District of Florida. The only nexus appears to be the residence of each Petitioning Creditor and their attorney in Jacksonville and Ormond Beach, Florida.

The Court finds that the KLF and K&A Objections, together with the Debtors' immediate Consents to the Orders for Relief in the instant cases, reflect that the Debtors are the primary, if not the sole, beneficiaries of the involuntary petitions filed in this Court to side-step the rulings in both the Pennsylvania District Court and the Pennsylvania Bankruptcy Court. As discussed below, this Court cannot sanction such apparent abuse of the bankruptcy process.

KLF and K&A represent that PMBS has no assets and that PPT has no assets beyond holding legal title of trust assets. In addition, KLF and K&A argue that this Court can exercise the venue selected by the Petitioning Creditors in the Debtors' cases because (i) the Petitioning Creditors are residents of the State of Florida and participated in the REAL VEBA Trust and SEWBP Trust within the State of Florida, and (ii) there is pending against one of the Debtors, PMBS, a single lawsuit in Duval County, Florida Circuit Court. These arguments are not persuasive to this Court as they fail to address the statutory venue requirements for filing bankruptcy cases under Title 11.

## CONCLUSIONS OF LAW

The petitions for relief for putative Debtors SEWBP Trust and REAL VEBA Trust, and the bankruptcy cases of the other four related Debtors, shall be transferred to the Pennsylvania Bankruptcy Court pursuant to 11 U.S.C. § 1408 because (1) venue is improper in the Middle District of Florida, (2) when venue is improper, the Court must transfer the cases or dismiss

them, and (3) even if the Court could retain the cases, the interest of justice requires that this Court transfer these cases to Pennsylvania.

### 1. Venue is Improper in the Middle District of Florida

Venue for a bankruptcy case is proper in the debtor's domicile, residence, principal place of business, or where the debtor's assets have been located for the one hundred and eighty days immediately preceding the petition, or in the district where the bankruptcy of a debtor's affiliate is pending. 28 U.S.C. § 1408. None of the Debtors is located in the Middle District of Florida. Each Debtor is a Pennsylvania entity formed under the laws of the Commonwealth of Pennsylvania. Each Debtor has an address in Bridgeport, Pennsylvania, and each lists Montgomery County, Pennsylvania as its principal place of business. Significantly, each of the Debtors checked the box on its voluntary bankruptcy petition in Pennsylvania agreeing that the "Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District."[43] Moreover, in the Florida Bankruptcy Cases the Petitioning Creditors did not check the box stating that the Debtors had been domiciled or had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of the petition or for a longer part of such 180 days than in any other District. Venue is improper in the Middle District of Florida.

### 2. Bankruptcy Rule 1014 Requires Transfer or Dismissal of an Improperly Venued Case

Federal Rule of Bankruptcy Procedure 1014(a)(2) provides if a petition is filed in an

---

[43] *Id.* The Debtors' voluntary bankruptcy petitions filed in the Pennsylvania Bankruptcy Court are Doc. No. 1 in each of the Debtors' Pennsylvania Bankruptcy Cases and are attached as Composite Exhibit D to the UST Motions to Transfer Venue.

improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the UST, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

The Petitioning Creditors argue that, even though Florida is not the proper venue, the Court should retain the Debtors' cases. The Court disagrees, and adopts the reasoning of the overwhelming majority of courts that hold 28 U.S.C. § 1406 and Bankruptcy Rule 1014, the governing provisions regarding improperly venued cases, do not allow a Court to retain a bankruptcy case filed in the wrong venue.[44]

Prior to 1984, venue was governed by two statutory trios, one for venue in district court cases and one for venue in bankruptcy cases. For civil actions, 28 U.S.C. § 1391 provided for proper venue, Section 1404 provided for transfer of properly venued actions, and Section 1406 provided for dismissal or transfer of improperly venued actions. For bankruptcy cases, 28 U.S.C. § 1472 governed proper venue, Section 1475 governed transfer of properly venued cases, and Section 1477 allowed for transfer or retention, but not dismissal, of improperly venued cases. *In re MacDonald*, 356 B.R. at 425.

In 1984, 28 U.S.C. §§ 1472 and 1475 were replaced by 28 U.S.C. §§ 1408 and 1412 respectively, without significant change, and Section 1477 was repealed in its entirety. An

---

[44] *See In re MacDonald*, 356 B.R. 416, 422 (W.D. Tenn. 2006) *aff'd sub nom. Thompson v. Greenwood*, 507 F.3d 416 (6th Cir. 2007); *In re Williams*, 2009 WL 291185 (Bankr. S.D. Tex. Feb. 5, 2009); *In re McDonald*, 219 B.R. 804, 805-06 (W.D. Tenn. 1998); *In re Dorval*, 1994 WL 228653 (Bankr. D.R.I. May 11, 1994); *In re Washington, Perito & Dubuc*, 154 B.R. 853 (Bankr. S.D.N.Y. 1993); *In re Petrie*, 142 B.R. 404 (Bankr. D. Nev. 1992); *In re Great Lakes Hotel Assocs.*, 154 B.R. 667 (E.D. Va. 1992); *In re Sporting Club at Illinois Center*, 132 B.R. 792 (Bankr. N.D. Ga. 1991); *ICMR, Inc. v. Tri–City Foods, Inc.*, 100 B.R. 51 (D. Kan. 1989); *In re Pick*, 95 B.R. 712 (Bankr. D.S.D. 1989); *In re Townsend*, 84 B.R. 764 (Bankr. N.D. Fla. 1988). *But See In re Lazaro*, 128 B.R. 168, 175 (Bankr. W.D. Tex. 1991); *In re Leonard*, 55 B.R. 106 (Bankr. D.D.C. 1985); *and In re Boeckman*, 54 B.R. 110 (Bankr. D.S.D. 1985).

obvious problem resulted, namely, no bankruptcy-specific statute applicable to improperly venued cases remains. The Petitioning Creditors' argument that Congress intended to change the scope of Section 1475 and "[collapse] its treatment of properly and improperly venued bankruptcy cases into the single sentence of Section 1412 appears . . . implausible." *MacDonald*, 356 B.R. at 426. The better position, adopted by the majority of courts, and this Court in *In re Campbell*, is that "§ 1412 must be construed to have the same scope as its predecessor, i.e., it governs only the transfer of cases and proceedings filed in a proper venue under § 1408." *Id.*[45] Alternatively, "section 1406 must apply in bankruptcy, requiring such a case to be dismissed or, if it be in the interest of justice, transferred to a court in which venue is proper." *Id.* at 427.

Bankruptcy Rule 1014(a)(2) was amended in 1987 to conform to Section 1412, and further supports this proposition. The Rule now states:

> If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

The Advisory Committee's explanation of the 1987 changes to Rule 1014 indicate that the word "may" should not be construed to permit retention:

> Both paragraphs 1 and 2 of subdivision (a) are amended to conform to the standard for transfer in 28 U.S.C. § 1412. Formerly, 28 U.S.C. § 1477 authorized a court either to transfer or retain a case which had been commenced in a district where venue was improper. However, 28 U.S.C. § 1412, which supersedes 28 U.S.C. § 1477, authorizes only the transfer of a case. **The rule is amended to delete the reference to retention of a case commenced in the improper district. Dismissal of a case commenced in the improper district as**

---

[45] *In re Campbell*, 242 B.R. 740, 748 (Bankr. M.D. Fla. 1999) (J. Funk) (finding when venue is proper in this district, "the issue becomes whether to retain or transfer because venue is proper, rather than whether to dismiss or to transfer because venue is improper.").

**authorized by 28 U.S.C. § 1406 has been added to the rule.** If a timely motion to dismiss for improper venue is not filed, the right to object to venue is waived.

(emphasis added). When Section 1477 was repealed without replacement, Congress "intended that improperly venued cases be treated the same as all other federal civil actions under Section 1406, and that upon the motion of a party in interest, the case must either be dismissed or transferred." *In re Sporting Club at Illinois Center*, 132 B.R. at 798-99. The more complicated, attenuated minority view, that Section 1412 also applies and allows retention, is inconsistent with congressional intent and adds "a lot of substance into section 1412 which does not exist on its face." *In re Sorrells*, 218 B.R. 580, 589 (10th Cir. BAP 1998). Accordingly, and consistent with the majority view, venue of the Debtors' cases is improper in this Court, and the only options are dismissal or transfer of the Debtors' cases.

### 3. The Court Must Transfer The Cases In The Interest Of Justice

Section 1412 allows a district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Even if the Court could retain the cases, retention in Florida is not practical and does not serve the interests of justice when there is a pending "police" action against the Debtors in Pennsylvania, which will not be subject to the automatic stay.[46]

The "interest of justice" is a broad and flexible standard questioning whether a change of venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. *Blumeyer*, 224 B.R. at 220 (*citing In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 149 B.R. 365 (Bankr. S.D.N.Y. 1993)). Aside from the

---

[46] *See* Doc. No. 446 in the DOL Enforcement Action, a copy of which is attached as Exhibit F to the UST Motions to Transfer Venue and as Exhibit C to the IF Motions to Dismiss.

administrative complications that arise from administering a debtor's assets during a pending ERISA enforcement action, the Court should consider factors such as justice and convenience of parties and witnesses, the defendant's choice of forum, whether the claim arose elsewhere, the ease of access to sources of proof, the transferee court's familiarity with the governing laws, the courts' calendars, and the local interest in deciding local controversies at home. *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 56 (D.D.C. 2011); *In re Campbell*, 242 B.R. at 746; *In re Blumeyer*, 224 B.R. at 220.

Neither justice nor convenience is served by keeping the Debtors' cases in Florida. The undisputed facts of this case show the Debtors were formed and operate in Pennsylvania, and all of the REAL VEBA Trust and SEWBP Trust's assets and operations are under the auspices of the Pennsylvania District Court. The IF reports to and answers to the Pennsylvania District Court. Many integral parties, including all of the Debtors and Koresko, are located in Pennsylvania.[47] No evidentiary hearing is required on this issue.

The filing of the Florida bankruptcy cases is tantamount to an impermissible change of venue for the DOL Enforcement Action, which was properly filed in the Eastern District of Pennsylvania in accordance with the venue provisions of Title 29, governing ERISA cases.[48] "Where an action under this subchapter [governing ERISA claims] is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the

---

[47] The Court also notes that at least two parties interested in these Debtors' bankruptcy cases, including Koresko himself, have appeared through counsel located in Pennsylvania, and the court has approved the admission of these lawyers *pro hac vice*. The Court further notes that virtually every paper filed in the Debtors' cases attaches as exhibits multiple papers, orders, excerpts of transcripts and other documents of record in the Pennsylvania District Court and Pennsylvania Bankruptcy Court.

[48] The filing of the Florida bankruptcy cases is also an impermissible end-run around the dismissals of the Debtors' voluntary bankruptcy cases in the Pennsylvania Bankruptcy Court. As set forth above, the Court cannot sanction such apparent abuse of the bankruptcy process.

breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  By making venue proper in the district where the plan is administered, "the special venue provision makes collection efforts efficient, economical, and inexpensive for ERISA plaintiffs, fulfilling Congress's intent to protect the financial integrity of such funds." *Flynn v. Veazey Const. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004).

Federal law anticipates the attempted removal or avoidance of Enforcement Actions, especially in ERISA cases, and statutorily prohibits them. Removing the action, or attempting to effectuate a *de facto* removal though a bankruptcy petition in another location, unjustly defeats the intent and purpose of the location provision. *See Holland v. ACL Transp. Servs., LLC*, 815 F. at 56 (giving deference to the special ERISA venue (citing 29 U.S.C. § 1132(e)(2)).  A challenge to venue in an ERISA case is "uphill battle" as substantial deference is given to a plaintiff's choice of forum.  *Int'l Painters & Allied Trades Indus. Pension Fund v. Tri–State Interiors, Inc.*, 357 F. Supp. 2d 54, 58 (D.D.C. 2004).  Accordingly, for ERISA cases, a local court's interest in deciding local controversies at home is considered a prevailing factor.

The interest of justice also requires that the Court consider the forum selection clauses in the REAL VEBA Trust and SEWBP Trust documents, which elect personal and subject matter jurisdiction in Pennsylvania. Forum selection clauses in any contract, including ERISA plans, are presumptively valid and should be enforced, absent a showing that they were procured by fraud or overreaching, or if the chosen forum would be so inconvenient as to deprive a litigant of its day in court. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

Assuming jurisdiction is otherwise proper, "forum selection clauses are as enforceable in bankruptcy courts as they are in other federal courts." *Street v. The End of the Rd. Trust*, 386

21

B.R. 539, 547 (D. Del. 2008).  Bankruptcy courts give great weight to forum selection clauses included in agreements related to a debtor's assets when determining the proper venue for a debtor's bankruptcy case. *See In re Knight-Celotex, LLC,* 427 B.R. 697, 707 (Bankr. N.D. Ill. 2010) (transferring the debtor's bankruptcy case to Illinois because the debtor signed a guarantee agreement that included a forum selection clause limiting litigation to "courts having situs in the City of Chicago, Illinois."); *In re HA-LO Indus., Inc.,* 2003 WL 21982145 *3 (N.D. Ill. Aug. 19, 2003) (giving "great weight" to the forum selection clause included in an engagement letter signed by the debtor).

Koresko, the sole individual who formed all six Debtors, drafted the REAL VEBA Trust and SEWBP Trust agreements that included the Pennsylvania forum selection and choice of law clauses. These agreements, together with the plan documents and ERISA, govern the relationship between the REAL VEBA Trust, the SEWBP Trust, and the beneficiaries, including the Petitioning Creditors. The Petitioning Creditors have made no showing that the forum selection clauses were acquired through fraud, nor can they credibly argue Pennsylvania is now an inconvenient forum.

For the foregoing reasons, the Court grants the UST and IF Motions to Transfer Venue. Venue of these cases is improper in Florida. The Court lacks the ability to retain the cases, and the interest of justice requires that the Court transfer them to the Pennsylvania Bankruptcy Court.[49]  Accordingly, it is

**ORDERED:**

---

[49] The UST and the IF sought to have the Court transfer venue to the Pennsylvania District Court.  On July 25, 1984, the United States District Court for the Eastern District of Pennsylvania entered its Order referring to the Bankruptcy Judges for the District any and all cases under Title 11.  To the extent a party seeks to have the cases administered in the Pennsylvania District Court, that party must file a motion to withdraw the reference.

1.  The IF Motions to Transfer Venue (Doc. No. 12 in Case No. 3:13-bk-5987-JAF and Doc. No. 12 in Case No. 3:13-bk-5988-JAF) are GRANTED.

2.  The UST Motions to Transfer Venue (Doc. No. 23 in Case No. 3:13-bk-05986-JAF; Doc. No. 24 in Case No. 3:13-bk-05989-JAF; Doc. No. 24 in 3:13-bk-05990-JAF; and Doc. No. 25 in 3:13-bk-05991-JAF) are GRANTED.

3.  The portions of the UST and IF Motions to Transfer Venue that seek dismissal of these cases are denied without prejudice.

4.  The Clerk of this Court is directed to transfer the six above-captioned cases to the Philadelphia Division of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**DATED** this 6 day of December, 2013 at Jacksonville, Florida.

**JERRY A. FUNK**
**UNITED STATES BANKRUPTCY JUDGE**